Defendant-appellant, Tyrone V. Berry, appeals the judgments of the Franklin County Court of Common Pleas, whereby appellant was charged and convicted of aggravated murder, aggravated robbery, aggravated burglary, kidnapping and having a weapon while under disability in the death of Michael Evans.
The evidence admitted in the trial court established the following general factual background: appellant bought marijuana from Michael Evans. Michael Evans sold marijuana from his apartment at 1928 Agler Road and lived with his girlfriend, Sharon Igel, and brother, Robert Evans.
Appellant lived with Shawne McCarty and Niko Biega. Shawne McCarty's brother, Harold McCarty, and Lester Johnson were friends with appellant and would visit him at his house. Appellant, Shawne McCarty and James Wright worked together for David Gibson, who renovated houses. Gibson owned a white flat-bed truck that appellant was permitted to drive during work hours. The keys were kept on the floorboard.
In December 1995, after work, appellant drove Shawne McCarty and Wright in the white flat-bed truck to Michael Evans' apartment to buy marijuana. Shawne McCarty and Wright stayed in the truck while appellant went to the apartment. Appellant came back to the truck without marijuana and claimed that Michael Evans did not have any to sell.
As the three men drove to appellant's house, appellant asked Shawne McCarty and James Wright if they would be interested in robbing Michael Evans because he had a lot of marijuana and money. Appellant later approached Harold McCarty and Biega about robbing Michael Evans. While talking to his friends about robbing Michael Evans, appellant stated that he wanted to get into Michael Evans' apartment and that, if he had to kill him, he would. Appellant asked his friends if they had a gun for him to use while committing the crime. Biega indicated that he had a 9.mm gun.
On December 25, around midnight, Robert Evans saw a white truck enter the parking lot outside his apartment. A man, later identified as appellant, came to the door asking for Michael Evans. When Robert Evans opened the door slightly, appellant and another man wearing a mask, later identified as Lester Johnson, pushed their way into the apartment. Johnson held a 9.mm gun to Robert Evans' head. Appellant restrained Robert Evans and shouted, "Where's the shit or I'll cap you!" Johnson went into Michael Evans' bedroom and shot him; subsequently killing him.
On the morning of December 26, appellant told Harold McCarty that he and Lester Johnson robbed a "dope dealer." Appellant told Harold McCarty that Johnson shot the drug dealer. Appellant was arrested on January 25, 1996.
Stephen Wolmack met appellant at the Franklin County Jail. Appellant told Wolmack that he bought marijuana from Michael Evans. Appellant bragged to him about killing the "honky drug dealer on Agler Road" around Christmas. Appellant stated that Johnson used a "9" with a silencer to commit the crime. Appellant described to Wolmack how Michael Evans' brother and girlfriend were present. Appellant described to Wolmack how Robert Evans ran after them after they fled the apartment and that Robert Evans began shooting at them.
On February 18, 1997, appellant's case proceeded to trial. Appellant waived his right to a jury trial on the weapon under disability charge. The trial court found appellant guilty on that charge, which included a firearm specification. The jury was unable to reach a verdict on the other charges before it and the trial court declared a mistrial.
Appellant's trial counsel perfected an appeal to the weapon under disability conviction. We stayed all proceedings in the appeal pending resolution of the remaining charges on retrial. The remaining charges were retried before a three-judge panel. On December 3, 1997, the panel found appellant guilty of the remaining charges, including all firearm specifications. Trial counsel perfected an appeal of these convictions from the second trial. Subsequently, we consolidated the two appeals.
Appellant appeals, assigning seventeen assignments of error as follows:
ASSIGNMENT OF ERROR NUMBER ONE
 THE TRIAL COURT ERRED AND DEPRIVED THE APPELLANT OF DUE PROCESS OF LAW IN VIOLATION OF THE FIFTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 AND 16 OF THE OHIO CONSTITUTION BY ENTERING JUDGMENT OF CONVICTION WHERE THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE AND WHERE SUCH CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.
 ASSIGNMENT OF ERROR NUMBER TWO
 THE TRIAL COURT ERRED AND FOUND THE APPELLANT GUILTY OF COUNT 7, WEAPON UNDER DISABILITY, CONTRARY TO OHIO REVISED CODE 2923.13.
 ASSIGNMENT OF ERROR NUMBER THREE
 THE TRIAL COURT ERRED AND DEPRIVED THE APPELLANT OF DUE PROCESS OF LAW IN VIOLATION OF THE FIFTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION BY EXCLUDING EVIDENCE OF THE RESULTS OF A POLYGRAPH EXAMINATION OF THE APPELLANT FROM THE MITIGATION PHASE OF THIS CAPITAL PROSECUTION.
 ASSIGNMENT OF ERROR NUMBER FOUR
 THE TRIAL COURT ERRED AND ALLOWED IMPROPER REBUTTAL TESTIMONY IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR NUMBER FIVE
 THE TRIAL COURT ERRONEOUSLY AND IMPROPERLY SENTENCED APPELLANT BECAUSE THE SENTENCE PRONOUNCED IN OPEN COURT DIFFERS FROM THAT SET FORTH IN THE JUDGMENT ENTRY IMPOSING THAT SENTENCE.
 ASSIGNMENT OF ERROR NUMBER SIX
 THE TRIAL COURT ERRONEOUSLY IMPOSED TWO SEPARATE TERMS OF ACTUAL INCARCERATION OF FIREARM SPECIFICATIONS.
 ASSIGNMENT OF ERROR NUMBER SEVEN
 THE TRIAL COURT ERRED AND DEPRIVED THE APPELLANT OF DUE PROCESS OF LAW IN VIOLATION OF THE FIFTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION BY ALLOWING THE PROSECUTIONS [SIC] REPEATED USE OF BROKERED TESTIMONY.
 ASSIGNMENT OF ERROR NUMBER EIGHT
 THE TRIAL COURT ERRED IN ADMITTING PORTIONS OF TESTIMONY OF JAMES WRIGHT IN VIOLATION OF OHIO RULE OF EVIDENCE 801(A)(2)(C).
 ASSIGNMENT OF ERROR NUMBER NINE
 THE TRIAL COURT ERRED IN NOT ADMITTING COURT'S EXHIBIT A IN VIOLATION OF OHIO RULE OF EVIDENCE 613(B).
 ASSIGNMENT OF ERROR NUMBER TEN
 THE TRIAL COURT ERRED IN ADMITTING PREJUDICIAL IRRELEVANT TESTIMONY IN VIOLATION OF OHIO RULE OF EVIDENCE 403.
 ASSIGNMENT OF ERROR NUMBER ELEVEN
 THE TRIAL COURT ERRED IN ADMITTING EXPERT TESTIMONY BASED ON SITUATIONS NOT INTRODUCED AS EVIDENCE IN VIOLATION OF OHIO RULE OF EVIDENCE 703.
 ASSIGNMENT OF ERROR NUMBER TWELVE
 THE TRIAL COURT ERRED AND ALLOWED IMPROPER REBUTTAL TESTIMONY IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR NUMBER THIRTEEN
 THE TRIAL COURT ERRED AND ALLOWED IMPROPER REBUTTAL TESTIMONY IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, AND OHIO RULE OF EVIDENCE 801(C).
 ASSIGNMENT OF ERROR NUMBER FOURTEEN
 THE TRIAL COURT ERRED AND VIOLATED APPELLANT'S RIGHT TO A SPEEDY TRIAL PURSUANT TO THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND OHIO REVISED CODE SECTION 2945.71(C)(2).
 ASSIGNMENT OF ERROR NUMBER FIFTEEN
 THE TRIAL COURT ERRED IN REFUSING TO GRANT APPELLANT'S MOTION TO SUPPRESS HIS STATEMENT IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION.
 ASSIGNMENT OF ERROR NUMBER SIXTEEN
 THE TRIAL COURT ERRED IN REFUSING TO GRANT APPELLANT'S MOTION TO SUPPRESS IDENTIFICATION IN VIOLATION OF THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION, AND OHIO REVISED CODE SECTION 2945.55.
 ASSIGNMENT OF ERROR NUMBER SEVENTEEN
 APPELLANT'S CONVICTION AND SENTENCE RESULTED FROM A DENIAL OF THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 9 AND 10 OF THE OHIO CONSTITUTION.
We will begin with appellant's second assignment of error.
In his second assignment of error, appellant argues that the trial court erred in convicting him of having a weapon while under disability. According to appellant, he could not be convicted of having a weapon while under disability because he never possessed the gun used in committing the offense against Michael Evans. We disagree.
R.C. 2923.13(A)(2), which sets forth the standard for having a weapon while under disability, provides that no person shall knowingly have a firearm if he or she has been convicted of any felony offense of violence.
In order to "have" a firearm, one must either actually or constructively possess it. State v. Hardy (1978), 60 Ohio App.2d 325,327; State v. Messer (1995), 107 Ohio App.3d 51,56. Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his or her immediate physical possession.State v. Wolery (1976), 46 Ohio St.2d 316, 329, certiorari denied (1976), 429 U.S. 932, 97 S.Ct. 339. Constructive possession may be achieved by means of an agent. Hardy, at 327. Moreover, we recognize that constructive possession of a weapon, even absent actual physical possession, may be established by a totality of evidence establishing an accomplice relationship between the physical possessor and his or her accomplice. State v. McConnell (Oct. 13, 1983), Cuyahoga App. No. 45294, unreported.
In this case, appellant planned the offense and solicited others to assist him. The evidence shows that appellant actively engaged in procuring the weapon used to kill Michael Evans. Ultimately, both Johnson and appellant were working together to use force, by means of a gun, to commit a crime against Michael Evans.
Based on the above evidence, we conclude that the trial court properly found appellant had constructive possession of the weapon used in the offenses in this case. As such, we overrule appellant's second assignment of error.
Appellant's third assignment of error concerns whether the trial court may admit into evidence the results of a polygraph test during the mitigation phase of a capital prosecution despite the absence of a stipulation from both parties as to the admissibility of the results. The admission or exclusion of evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. Peters v.Ohio State Lottery Comm. (1992), 63 Ohio St.3d 296, 299. The term "abuse of discretion" connotes more than an error of law or judgment; the term implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
Generally, the trial court cannot admit the results of a polygraph test simply at a defendant's request. State v.Jamison (1990), 49 Ohio St.3d 182, 190. Although polygraph examination results may be admitted for corroboration or impeachment, the parties must first jointly stipulate to the admissibility of the test results. State v. Souel (1978),53 Ohio St.2d 123, 132-133. However, appellant asserts that the trial court should have admitted the polygraph test results regardless of appellee's declining to stipulate to the admissibility of the results. Thus, according to appellant, theSouel requirements should not apply to capital prosecutions. We disagree.
We acknowledge that R.C. 2929.04(C) provides that the defendant shall be given great latitude in the presentation of evidence relevant to the mitigation of the imposition of a death sentence.
However, Ohio courts have often questioned the reliability and accuracy of polygraph tests. See Ohio v. Rowe (1990),68 Ohio App.3d 595, 610. Indeed, the United States Supreme Court has indicated that the reliability of polygraph evidence has not been sufficiently established. United States v. Scheffer
(1998), 523 U.S. 303, 118 S.Ct. 1261, 1265, n. 5. As such, inSouel, the Ohio Supreme Court concluded that allowing parties to stipulate as to the admissibility of the polygraph testimony establishes a proper foundation for the admission of the test results despite the ongoing controversy concerning the accuracy and reliability of the tests. Souel, at 133. Thus, a court is willing to rely on polygraph tests despite controversy surrounding the accuracy and reliability of the tests as long as both parties stipulate as to the admissibility of the tests.Id.
Accordingly, we conclude that the requirement that parties must stipulate to the admissibility of polygraph testimony applies to the mitigation phase of a capital prosecution. In this case, appellee did not stipulate as to the admissibility of the polygraph test results. Therefore, we conclude that the trial court did not abuse its discretion in excluding the polygraph test results from evidence during the mitigation phase of the capital prosecution. As such, we overrule appellant's third assignment of error.
We will next address appellant's seventh assignment of error, wherein he challenges appellee's use of witnesses who testify in exchange for plea agreements. According to appellant, the use of such testimony violates his due process rights and should not be allowed. We disagree.
According to the Ohio Supreme Court, the prosecution's use of witnesses who testify in exchange for plea agreements does not violate a defendant's right to due process. Wolery, at 320-325, and paragraph one of the syllabus. As such, the Ohio Supreme Court concluded that a witness's testimony is not excludable solely because the witness is testifying pursuant to a plea agreement. Id. at 325. Thus, we reject appellant's contention that the use of testimony by witnesses on behalf of appellee in exchange for plea agreements violates his right to due process.
In so concluding, we recognize that the trial contains procedural mechanisms to ensure that a defendant is provided a fair trial when a witness testifies against the defendant in exchange for a plea agreement. For example, the fact that testimony is given in exchange for a plea agreement goes to the weight of the testimony and may be considered by the trier of fact upon deliberation. Id. at 321. Additionally, the disclosure of the plea agreements to the defense before trial, cross-examination of those witnesses providing such testimony, and the use of proper jury instructions provide an opportunity to ferret out false testimony by witnesses only interested in obtaining a plea agreement. United States v. Ware (C.A.6, 1998), 161 F.3d 414, 424.
As well, appellant asserts that the use of testimony on behalf of appellee in exchange for a plea agreement is prohibited by R.C. 2921.02(C), which indicates that "[n]o person, with purpose to corrupt a witness or improperly influence him [or her] with respect to his [or her] testimony in an official proceeding * * * shall promise, offer, or give him [or her] or another person any valuable thing or valuable benefit." Additionally, appellant argues that the use of such testimony is prohibited by DR 7-109(C), which states that "[a] lawyer shall not pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of his [or her] testimony or the outcome of the case." We disagree.
We have previously rejected the claim that government officials violate R.C. 2921.02(C) and DR 7-109(C) when they offer plea bargains in exchange for testimony. State v. Drake
(Dec. 17, 1998), Franklin App. No. 98AP-448, unreported (1998 Opinions 5698, 5705).
Courts have long recognized that statutes do not apply to the government and do not affect government rights unless the text expressly includes the government. See Nardone v. United States
(1937), 302 U.S. 379, 383, 58 S.Ct. 275, 277; Ware, at 419. This rule applies where a statute would deprive the government of a recognized or established prerogative or interest, or where applying the statute against the government would lead to an absurdity. Nardone, at 277.
We conclude that the use of a witness's testimony on behalf of the prosecution in exchange for a plea agreement is an established prerogative of the state. In so concluding, we recognize the rationale set forth by the United States Court of Appeals for the Sixth Circuit in Ware. According to the court in Ware, no practice is more ingrained in our criminal justice system than the practice of the government, represented by a prosecutor, calling a witness who is an accessory to the crime for which the defendant is charged and having that witness testify under a plea agreement. Id. at 421. The court in Ware
also noted that the United States Supreme Court has repeatedly upheld the plea agreement practices historically utilized in our criminal justice system. Ware, at 419, citing Brady v.United States (1970), 397 U.S. 742, 90 S.Ct. 1463.
To support his claim against the use of testimony in exchange for plea agreements, appellant relies upon the panel decision in United States v. Singleton (C.A.10, 1998), 144 F.3d 1343
(concluding that government officials violate laws proscribing bribery when offering plea bargains in exchange for testimony). However, we note that the United States Court of Appeals for the Tenth Circuit, sitting en banc, repudiated the panel decision. See United States v. Singleton (C.A.10, 1999),165 F.3d 1297. The court sitting en banc in Singleton concluded that a federal statute prohibiting persons from promising others something of value in exchange for testimony does not prohibit government officials from offering plea bargains in exchange for testimony. Singleton, at 1301-1302. The enbanc court in Singleton concluded that the federal statute does not apply to government officials because the act of offering plea bargains in exchange for testimony is an established prerogative of the government. Id. at 1301. Similarly, the court in Singleton recognized that courts have drawn on a longstanding practice sanctioning the testimony of accomplices against their confederates in exchange for leniency. Id. at 1301.
Additionally, we conclude that applying R.C. 2921.02(C) and DR 7-109(C) to prohibit government officials from offering plea bargains in exchange for testimony would work an obvious absurdity in the application of our state statutes. For example, R.C. 2945.44 explicitly provides for the grant of immunity from prosecution in exchange for testimony from a witness. As such, it would be difficult to reconcile a conclusion that R.C. 2921.02(C) prohibits government officials from offering plea agreements in exchange for testimony, while R.C. 2945.44 allows the government to grant witness's immunity from prosecution in exchange for testimony. As such, we reaffirm our conclusion that R.C. 2921.02(C) and DR 7-109(C) do not prohibit government officials from offering plea agreements in exchange for testimony.
Therefore, based on the reasons noted above, we overrule appellant's seventh assignment of error.
Appellant's eighth assignment of error concerns the decision by the three-judge panel to admit into evidence Wright's testimony that he heard Johnson tell appellant that he would like to wear a mask while robbing Michael Evans. According to appellant, the trial court improperly concluded that Wright's testimony regarding Johnson's statement was admissible under Evid.R. 801(D)(2)(e), which governs the admissibility of a co-conspirator's statements offered against a party to a conspiracy. We agree.
For a statement to be admissible pursuant to Evid.R. 801(D)(2)(e), the party proffering the statement of a co-conspirator against a party to the conspiracy must establish five elements: (1) the existence of a conspiracy; (2) the defendant's participation in the conspiracy; (3) the participation in the conspiracy by the declarant co-conspirator; (4) the statement was made in the course of the conspiracy; and (5) the statement was made in furtherance of the conspiracy. State v. Milo (1982), 6 Ohio App.3d 19, 22.
The trial court must receive proof of the existence of a conspiracy, as well as the participation by the defendant and the declarant co-conspirator prior to the proffer of the co-conspirator's out-of-court declaration. Id. at 23. Proof of the conspiracy and participation in a conspiracy must be established by independent evidence. Id.; see, also, State v.Carter (1995), 72 Ohio St.3d 545, 550.
In this case, the trial court needed independent proof of Johnson's participation in the conspiracy before admitting Johnson's statement under Evid.R. 801(D)(2)(e). We conclude that the trial court did not receive independent proof that Johnson participated in the conspiracy before appellee proffered his out-of-court statement. We base our decision on the fact that, before appellee proffered Johnson's out-of-court statement, the evidence established that appellant was talking only to Wright, Shawne McCarty and Biega about planning and committing the crime against Michael Evans. Johnson's statement to appellant, that he wanted to wear a mask when robbing Michael Evans, was the first sign of evidence that Johnson participated in the conspiracy. Thus, we conclude that the trial court erred in admitting Johnson's out-of-court statement under Evid.R. 801(D)(2)(e).
However, the error in allowing Johnson's out-of-court statement, pursuant to Evid.R. 801(D)(2)(e), is harmless. Error is harmless if the remaining evidence comprises overwhelming proof of defendant's guilt. State v. Sage (1987), 31 Ohio St.3d 173,181. Error in admitting hearsay does not justify reversal where it is harmless. Carter, at 550. As noted below, there is overwhelming evidence to support appellant's conviction without Johnson's statement. Accordingly, we overrule appellant's eighth assignment of error.
In his ninth assignment of error, appellant argues that the three-judge panel erred by not allowing him to impeach appellee's witness, James Wright. We disagree.
As noted above, the admission or exclusion of evidence is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. Peters, at 299. Under Evid.R. 613, a witness may be impeached about an oral or written statement made prior to trial that is inconsistent with his or her trial testimony. However, Evid.R. 613 does not define an inconsistent statement. A general definition of an inconsistent statement is: "It is enough if the proffered testimony, taken as a whole, either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness whom it is sought to contradict." McCormick, Evidence (3rd Ed. Cleary Ed. 1984) 73, Section 34, n. 15.
In this case, on direct-examination, Wright testified that no deals had been made in exchange for his statement to Detective Viduya. On cross-examination, Wright testified that he told Detective Viduya that Prosecutor Canepa was not trying to make a deal with him in exchange for his testimony. Defense counsel sought to impeach Wright's denials with a portion of a taped interview between Wright and Viduya, where Viduya asked Wright, "[I]f [Wright's mother] called Canepa to try to get him to work a deal for [Wright] in exchange for [Wright] testifying against Tyrone Berry."
Although the three-judge panel accepted the proffer of the tape, the panel did not allow appellant to impeach Wright with the tape. The panel concluded that Wright's testimony is not inconsistent with the statement on the tape. We conclude that the three-judge panel properly decided that Wright's testimony is not inconsistent with the statement on the tape. Wright's testimony concerns whether any deals were made with him in exchange for his testimony or whether he was involved in any discussions about deals in exchange for his testimony. The statement on the tape that appellant sought to use for impeachment concerns whether Wright's mother was involved in any discussions with the government to arrange a deal for Wright in exchange for his testimony.
Accordingly, the trial court did not abuse its discretion when it did not allow appellant to impeach Wright with the above-mentioned statement from the taped interview between Wright and Detective Viduya. As such, we overrule appellant's ninth assignment of error.
In his tenth assignment of error, appellant attacks parts of Stephen Wolmack's testimony. Wolmack testified that he and appellant met each other in a jail gym. Wolmack testified that appellant was lifting weights and yelling "insane Crip." According to Wolmack, appellant introduced himself to Wolmack saying that he had been to California and was an "insane Crip." Wolmack testified that appellant discussed his involvement in the death of Michael Evans. Appellant argues that the above testimony is irrelevant and prejudicial because the testimony links appellant to gang activity. We disagree.
The references of appellant calling himself an "insane Crip" provide background information as to how Wolmack knew appellant. Additionally, the references set up the context in which appellant admitted his role in committing the crime against Michael Evans. Thus, we conclude that the references to appellant's gang affiliation were relevant and not prejudicial. Accordingly, we overrule appellant's tenth assignment of error.
Appellant's eleventh assignment of error concerns expert testimony by Dr. Keith Norton, the forensic pathologist that performed an autopsy on Michael Evans. Appellee asked Dr. Norton questions concerning whether Michael Evans' gunshot wounds would be consistent with various positions of the victim's body on his bed when he was shot. Appellant asserts that Dr. Norton's opinions concerning the victim's positions when shot were based on hypothetical situations not introduced into evidence nor perceived by the expert. Thus, according to appellant, Dr. Norton's opinions should have been excluded from evidence. We disagree.
Evid.R. 705 provides that an expert may testify in terms of an opinion or inference and give his or her reasons for such testimony after disclosure of the underlying facts or data. Furthermore, Evid.R. 703 identifies two permissible sources of facts or data upon which an expert may base his or her opinion or inference. The expert may base his or her opinion on first-hand knowledge or, in the alternative, the expert may draw upon facts admitted in evidence at the hearing or trial at which he or she is called to testify. Id.
A trial court's ruling concerning the admission of expert testimony is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion. Scott v.Yates (1994), 71 Ohio St.3d 219, 221.
In this case, Dr. Norton's opinions regarding Michael Evans' position on his bed were based upon the number, location, direction and angle of the gunshot wounds to Michael Evans' body. Dr. Norton obtained these facts when he performed the autopsy on the victim. These facts were placed into evidence via the coroner's report. Additionally, Dr. Norton testified about these facts relating to Michael Evans' gunshot wounds before testifying as to his opinion of Michael Evans' position on the bed when shot. Thus, Dr. Norton's opinions relating to Michael Evans' position on his bed when shot were based on facts perceived by him and admitted into evidence. As such, the trial court properly admitted Dr. Norton's opinions. Therefore, we overrule appellant's eleventh assignment of error.
Appellant's fourth, twelfth and thirteenth assignments of error concern appellant's assertions of improper rebuttal testimony and will be discussed together.
Appellant's fourth assignment of error concerns the three-judge panel's decision to admit into evidence portions of appellant's testimony from his first trial. During the rebuttal portion of the second trial, appellee introduced into evidence appellant's testimony, which was made during this first trial. Appellant asserts that the trial court improperly admitted appellant's prior testimony into evidence during the rebuttal portion of the second trial. We disagree.
The purpose of the rebuttal portion of a trial is to allow the state to refute evidence and testimony offered by the defense. State v. Moore (1973), 47 Ohio App.2d 181, 187. The scope of a witness's rebuttal testimony is left to the discretion of the trial court. State v. Graven (1978), 54 Ohio St.2d 114,115. Therefore, an appellate court that reviews the trial court's admission or exclusion of rebuttal evidence must limit its review to whether the lower court abused its discretion. See Peters, at 299; State v. Finnerty (1989),45 Ohio St.3d 104, 107.
In this case, appellee introduced into evidence a statement by appellant from the first trial whereby he indicated that he was in Delaware from 5:00 to 8:00 on the night Michael Evans was murdered. We conclude that this statement rebutts appellant's general alibi asserted in the second trial that he was with his mother and sister throughout the evening of Michael Evans' death. The statement comes into evidence under Evid.R. 801(D)(2)(a), which provides for the admissibility of statements by a party opponent. Thus, the statement was properly admitted during the rebuttal portion of the trial.
As well, appellant asserts that the use of his prior trial testimony noted above did violate his constitutional right not to incriminate himself. We have previously recognized that a defendant may waive the Fifth Amendment right against self-incrimination by his or her voluntarily taking the stand in his or her own behalf in one trial. State v. Slone (1975),45 Ohio App.2d 24, 27, citing Harrison v. United States (1968),392 U.S. 219, 88 S.Ct. 2008; see, also, State v. Creasy (Sept. 6, 1994), Franklin App. No. 94APA03-376, unreported (1994 Opinions 4019, 4020); State v. Flors (1987), 38 Ohio App.3d 133,137-138. By so testifying, the defendant waives his or her right to assert the Fifth Amendment right where such testimony is used against him or her in any subsequent trial of the same offense. Slone, at 27.
Thus, appellant waived his Fifth Amendment right against self-incrimination when he testified in the first trial. As such, appellant cannot claim that his constitutional rights were violated because the three-judge panel admitted into evidence appellant's testimony noted above. However, we acknowledge that the three-judge panel erred in admitting other portions of appellant's testimony on the basis that the statements were not proper rebuttal testimony. The three-judge panel admitted into evidence appellant's testimony from his first trial, where he admitted that he lied to Detective Viduya about the time frame as to his whereabouts on the night of Michael Evans' death.
No evidence was offered on appellant's behalf concerning his own statements as to the time frame of his whereabouts on the night of Michael Evans' murder. Thus, the testimony noted above neither refutes nor impeaches anything from appellant's case. As such, the testimony noted above was improper rebuttal testimony. However, the error surrounding this testimony was harmless.
As noted above, error is harmless if the remaining evidence comprises overwhelming proof of defendant's guilt.Sage, at 181. Furthermore, in a bench trial in a criminal case, the court is presumed to have considered only relevant material and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary. State v. Post (1987),32 Ohio St.3d 380, 384.
In this case, as noted below, there is overwhelming evidence of appellant's guilt despite appellant's untrue statements about the time frame as to his whereabouts. Thus, we conclude that appellant was not prejudiced by the admission of these statements.
In appellant's twelfth and thirteenth assignments of error, he claims that the trial court allowed improper rebuttal testimony by Officer Lieberman and Anthony Evans, respectively. We disagree.
In this case, in the trial before the three-judge panel, Robert Evans testified on behalf of appellant that he discharged two shots from a .357 gun at his assailants. Many of appellant's witnesses testified about the firearm Robert Evans discharged at his assailants. The witnesses testified as to a different gun being used by Robert Evans. Furthermore, appellant's witnesses provided conflicting testimony as to the number of rounds Robert Evans shot. Accordingly, during the rebuttal phase of the trial, Officer Lieberman testified that she found a .357 gun containing two spent rounds at the scene of the homicide. Officer Lieberman's testimony goes toward rebutting those witnesses for appellant that provided conflicting testimony over the gun Robert Evans fired at his assailants. As such, we conclude that the trial court did not abuse its discretion in allowing Officer Lieberman's rebuttal testimony regarding the .357 gun found at the scene of the homicide.
Additionally, in the rebuttal phase of the trial before the three-judge panel, appellee presented Anthony Evans, brother of Robert and Michael Evans, to rebut testimony provided by appellant's witness, Ricky Dorris. Appellant placed Dorris' testimony from appellant's first trial into the evidence at the second trial. Dorris testified on direct-examination that he never saw anyone running away from the apartment after the homicide. On cross-examination, Dorris testified that he had no conversation with Anthony Evans regarding seeing appellant jump over a balcony at the Agler Road Apartments after the homicide. During rebuttal, Anthony Evans testified that Dorris did talk to him about seeing appellant jump over a balcony at the apartment complex after the homicide.
Accordingly, Anthony Evans' testimony rebuts the inconsistent statement made by Dorris. As such, the statement was properly admitted under Evid.R. 613(B) to impeach Dorris' testimony with his prior inconsistent statement and was not offered for its truth. See Evid.R. 613(B), allowing the use of extrinsic evidence to impeach a witness with a prior inconsistent statement.
Therefore, based on the reasons noted above, we overrule appellant's fourth, twelfth and thirteenth assignments of error.
Appellant asserts in his fourteenth assignment of error that we should reverse his conviction because the trial court violated his right to a speedy trial. We disagree. A defendant must assert the issue of denial of a speedy trial at or prior to the commencement of trial or the issue is waived on appeal.State v. Trummer (1996), 114 Ohio App.3d 456, 470-471;Worthington v. Ogilby (1982), 8 Ohio App.3d 25, 27; R.C.2945.73(B).
In this case, on September 13, 1996, appellant filed a motion to dismiss on the basis that he had been denied his right to a speedy trial. However, on October 3, 1996, the trial court filed a judgment entry noting that appellant had withdrawn his motion to dismiss on speedy trial grounds. Appellant did not re-assert his motion alleging that he was denied his right to a speedy trial.
Accordingly, we conclude that appellant waived the issue of whether he was denied his right to a speedy trial. As such, we overrule appellant's fourteenth assignment of error.
Appellant's fifteenth assignment of error concerns the trial court's decision to overrule appellant's motion to suppress statements he made to Detective Viduya on the date of his arrest. Appellant asserts that his statements to the detective were not voluntary. We disagree.
A defendant's waiver of his or her Fifth Amendment right not to make self-incriminating statements must be made voluntarily, knowingly and intelligently. Miranda v. Arizona (1966),384 U.S. 436, 475, 86 S.Ct. 1602, 1628. The relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception by the government. State v.Dailey (1990), 53 Ohio St.3d 88, 91; see, also, Colorado v.Spring (1987), 479 U.S. 564, 574, 107 S.Ct. 851, 857. Additionally, to determine the voluntariness of the defendant's waiver of his or her Fifth Amendment right not to make self-incriminating statements, the court should consider the following: (1) the age, mentality and prior criminal experience of the defendant; (2) the length and intensity of the interrogation; and (3) the existence of physical mistreatment, threat or inducement by government officials. State v. Brewer
(1990), 48 Ohio St.3d 50, 58, citing State v. Edwards (1976),49 Ohio St.2d 31, paragraph two of the syllabus, vacated as to death penalty, Edwards v. State (1978), 438 U.S. 911,98 S.Ct. 3147. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Dailey, at 91.
In this case, Detective Viduya read appellant hisMiranda rights and explained to him the Fifth Amendment right against making self-incriminating statements. Appellant told the detective that he understood his rights and that he had nothing to hide, and was willing to answer questions about Michael Evans' death.
There is no evidence that appellant agreed to answer questions about Michael Evans' death because of police coercion, threats or inducements. Moreover, the detective did not make any deals to appellant in exchange for answers to his questions. Contrary to appellant's assertions, the detective did not tell appellant that he would not charge him with anything if appellant either revealed the person who shot Michael Evans or confessed to shooting Michael Evans. Indeed, appellant denied involvement in the crime and did not reveal who shot Michael Evans. Thus, we conclude that appellant voluntarily, intelligently and knowingly waived hisFifth Amendment right against self-incrimination.
Contrary to appellant's assertions, the fact that appellant refused to sign a waiver form does not dictate our decision. A refusal to sign a waiver form is not conclusive proof that the waiver was involuntary. State v. Scott (1980), 61 Ohio St.2d 155,161. Moreover, appellant's low I.Q. does not negate the voluntariness of his waiver. See Dailey, at 92, noting that a person's low I.Q. alone does not negate the voluntariness of a defendant's waiver of his or her Fifth Amendment right against making self-incriminating statements. As noted above, appellant indicated that he understood his rights and expressed a willingness to talk. Additionally, appellant told the detective that he was familiar with the law and even read law books.
Accordingly, we conclude that the trial court properly denied appellant's motion to suppress his statements. Therefore, we overrule his fifteenth assignment of error.
In appellant's sixteenth assignment of error, he asserts that the trial court erred in overruling his motion to suppress pre-trial identifications on the basis that the pre-trial identification procedures were overly suggestive. We disagree.
The reliability of a pre-trial identification is the linchpin in determining its admissibility. Manson v. Brathwaite (1977),432 U.S. 98, 114, 97 S.Ct. 2243, 2253. The factors affecting reliability of the pre-trial identification include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of his or her prior description of the criminal, the level of certainty demonstrated at the identification, and the time between the crime and the identification. Neil v. Biggers
(1972), 409 U.S. 188, 189, 93 S.Ct. 375, 382. Moreover, in reviewing the reliability of a pre-trial identification, a trial court must determine whether, under a totality of the circumstances, there is a very substantial likelihood of irreparable misidentification. Manson, at 2249. Additionally, the photographic identification procedure must not be so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Simmons v.United States (1968), 390 U.S. 377, 384, 88 S.Ct. 967, 971.
In this case, the photo array used for the pre-trial identification of appellant was composed of six computer-generated photographs of African-American males similar in appellant's size and age. Robert Evans identified appellant as one of his assailants from the photo array. The evidence shows that Robert Evans had an opportunity to see his assailant at the time of the crime and gave a detailed description of his assailant to the police. He was told to look at each photograph carefully and only select the photo if he was sure he was correctly identifying his assailant. Robert Evans immediately selected appellant's photo without hesitation. Thus, we conclude that Robert Evans' pre-trial identification of appellant is reliable and not based on an impermissibly suggestive pre-trial identification procedure.
Sharon Igel identified appellant from the photo array as a person whom she had seen in Michael Evans' apartment on a previous occasion. She was shown the same photo array that Robert Evans used and was given the same instructions. Thus, we conclude that Igel's pre-trial identification of appellant is reliable and not based on an impermissibly suggestive pre-trial identification procedure.
Shawne and Harold McCarty identified appellant from the photo array as a person who asked them to assist appellant in robbing Michael Evans. The same photo array that Robert Evans used was shown separately to Shawne and Harold McCarty and were given the same instructions before identifying appellant from the photo array. Thus, we conclude that Shawne and Harold McCarty's pre-trial identifications of appellant are reliable and not based on an impermissibly suggestive pre-trial identification procedure.
James Wright identified appellant from the photo array as a person who asked him to assist appellant in robbing Michael Evans. Wright was shown the same photo array as Robert Evans and identified appellant without hesitation. Thus, we conclude that Wright's pre-trial identification of appellant is reliable and not based on an impermissibly suggestive pre-trial identification.
Therefore, the trial court did not err in concluding that the pre-trial identifications were valid and not based on an impermissibly suggestive pre-trial identification procedure. As such, the trial court properly overruled appellant's motion to suppress the pre-trial identifications. Therefore, we overrule appellant's sixteenth assignment of error.
In his seventeenth assignment of error, appellant asserts that his conviction and sentence resulted from ineffective assistance of counsel. We disagree.
The United States Supreme Court set forth the test for determining ineffective assistance of counsel in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 2064. First, the defendant must show that counsel's performance was deficient. Id. Second, defendant must show that the deficient performance prejudiced him or her. Id. When a convicted defendant complains of ineffective assistance of counsel, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. The performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Id. at 2065.
Judicial scrutiny of counsel's performance must be highly deferential. Id. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Id. Thus, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered a tactical decision. Id.
Appellant asserts that trial counsel should have renewed before the three-judge panel in the second trial those pre-trial motions that were rejected by the trial court during the first trial. Alternatively, appellant asserts that trial counsel should have renewed objections to the decisions by the trial court on the pre-trial motions.
We reject appellant's contention that his trial counsel's failure to renew pre-trial motions and objections constituted ineffective assistance of counsel. A few of the motions submitted by trial counsel before the first trial dealt with matters concerning a jury. We conclude that it was unnecessary to bring such motions before the three-judge panel hearing the second trial. Some of the motions brought up before the first trial were pre-trial death penalty motions. However, appellant did not receive the death penalty and was not prejudiced by a failure to re-assert such motions. Id. at 2064 (noting that a claim for ineffective assistance of counsel fails where defendant was not prejudiced by the alleged deficient performance).
Similarly, we acknowledge that trial counsel did submit pre-trial motions before the three-judge panel. For example, appellant's trial counsel brought motions to suppress pre-trial identifications and the use of appellant's pre-trial statement. Additionally, we acknowledge that appellant's trial counsel filed a pre-trial motion regarding the admission of polygraph test results. Additionally, appellant claims that he was denied the right to effective assistance of counsel because trial counsel withdrew a motion to dismiss on speedy trial grounds and failed to re-submit the motion before trial. However, we conclude that appellant has failed to establish that trial counsel's withdrawal of the motion to dismiss on speedy trial grounds, as well as trial counsel's failure to re-submit the motion, was unreasonable under the circumstances in this case.
As noted above, on October 3, 1996, the trial court filed a judgment entry noting that appellant had withdrawn his motion to dismiss on speedy trial grounds after a hearing on October 2, 1996. The transcript of the October 2, 1996 hearing has not been included in this record. As such, we must presume the validity of the trial court's proceedings. Knapp v. EdwardsLaboratories (1980), 61 Ohio St.2d 197, 199.
Thus, based on the circumstances noted above, we conclude that appellant did not receive ineffective assistance of counsel because his trial counsel withdrew a motion to dismiss on speedy trial grounds and failed to re-submit the motion before the first trial. Therefore, we overrule appellant's seventeenth assignment of error.
We will now address appellant's first, sixth and fifth assignments of error, respectively.
In appellant's first assignment of error, he asserts that his conviction is not supported by sufficient evidence. We disagree.
Sufficiency of evidence is the legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. State v. Thompkins (1997), 78 Ohio St.3d 380,386. When reviewing whether a verdict was supported by a sufficiency of the evidence, an appellate court examines the evidence in the light most favorable to the prosecution and concludes whether any rational trier of fact could have found essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact. Jenks, at 273.
In this case, appellant was convicted of having a weapon while under disability. R.C. 2923.13(A)(2), which is the statute defining the crime of having a weapon under disability, provides that no person shall knowingly have a firearm if he or she has been convicted of any felony offense of violence. In this case, the record establishes that appellant was previously convicted of burglary, which is a felony offense of violence. See R.C. 2901.01(I)(1) (defining burglary as an offense of violence). We have already concluded in this opinion that appellant had constructive possession of the weapon. Therefore, we conclude that there is sufficient evidence to support appellant's conviction of having a weapon while under disability.
Furthermore, appellant was convicted of aggravated robbery and aggravated burglary. R.C. 2911.01 defines aggravated robbery. Under R.C. 2911.01, a person who, in attempting to commit or committing a theft offense, has a deadly weapon on or about his or her person and/or inflicts or attempts to inflict serious physical harm on another is guilty of aggravated robbery.
R.C. 2911.11 indicates that a person who, by force, trespasses into someone's home to commit a theft offense or a felony while inflicting or either attempting or threatening to inflict physical harm on another while having a deadly weapon on or about his or her person is guilty of aggravated burglary.
In this case, the record shows that appellant wanted to break into Michael Evans' apartment and take money and marijuana from him. Appellant asked his friends to join him in carrying out the crime. Appellant actively procured a gun for the crime. Biega indicated that he had a 9.mm gun. Robert Evans identified appellant out of a photo array and in court as one of the two people who broke into Michael Evans' apartment on December 25, 1995, around midnight. A man later identified as Lester Johnson held a 9.mm gun to Robert Evans' head. Robert Evans testified that appellant held him down and yelled, "Where's the shit or I'll cap you," while Lester Johnson went into Michael Evans' bedroom and killed him with his gun. The next morning, appellant told Harold McCarty that he and Lester Johnson robbed a "dope dealer." Thus, we conclude that there is sufficient evidence to support appellant's conviction of aggravated robbery and aggravated burglary.
Additionally, appellant was convicted of kidnapping. R.C.2905.01 defines kidnapping as the act of using force, threat or deception to restrain another of his or her liberty to facilitate a felony.
In this case, as noted above, Robert Evans testified that appellant held him down and yelled, "Where's the shit or I'll cap you," after appellant and Lester Johnson broke into the apartment. Thus, we conclude that there is sufficient evidence to support appellant's conviction of kidnapping.
As well, appellant was convicted of aggravated murder. Under R.C. 2903.01, a person can be convicted of aggravated murder if the person caused the death of another with prior calculation and design. Id. A person can be convicted of aggravated murder if he or she causes the death of another while committing or attempting to commit kidnapping, aggravated robbery or aggravated burglary. Id.
Furthermore, where the state proves a defendant's participation in planning and executing a robbery with a gun, there is sufficient evidence to support a finding of the defendant's intent to kill. In re Washington (1998), 81 Ohio St.3d 337,340.
In this case, as noted above, the evidence establishes that appellant told his friends that he wanted to rob Michael Evans. He sought accomplices and actively procured a gun for the crime. Appellant said that he wanted to get into Michael Evans' apartment and that if he had to kill him he would. After appellant and Lester Johnson broke into Michael Evans' apartment, Johnson held a gun to Robert Evans' head. Appellant restrained Robert Evans and yelled, "Where's the shit or I'll cap you!" Johnson went into Michael Evans' bedroom and shot him several times. The next morning, appellant told Harold McCarty that he and Johnson robbed a "dope dealer," and that Johnson shot the drug dealer.
Appellant told Stephen Wolmack that he bought marijuana from Michael Evans. Appellant bragged to him about killing the "honky drug dealer on Agler Road" around Christmas. Appellant told Wolmack that Johnson had a "9" with a silencer. Appellant described to Wolmack how Robert Evans came after them after they fled the apartment and began shooting at him and his accomplice. Moreover, Michael Evans' death resulted from appellant's involvement in committing aggravated robbery, aggravated burglary and kidnapping. Thus, we conclude that the evidence supports appellant's conviction of aggravated murder.
Each of appellant's convictions contained gun specifications. R.C. 2929.71 provides that an additional term of actual incarceration shall be imposed where an offender is convicted of a specification charging him or her with having a firearm on or about his person or under his control while committing a felony. A defendant indicted for and convicted of a felony, along with a firearm specification, is subject to incarceration under the firearm specification regardless of whether the defendant was the principal offender or an unarmed accomplice.State v. Chapman (1986), 21 Ohio St.3d 41, syllabus.
As noted above, appellant wanted to rob Michael Evans and asked his friends to assist him. He actively sought to procure a gun and indicated that, if he had to kill Michael Evans, he would. Appellant and Johnson were working together to use force, by means of a gun, to commit the crime against Michael Evans. Thus, we conclude that appellant was properly convicted of the firearm specifications.
Additionally, in the first assignment of error, appellant asserts that his conviction is against the manifest weight of the evidence. We disagree.
Determining whether a judgment is against the manifest weight of the evidence concerns the inclination of the greater amount of credible evidence to support one side of the issue rather than the other. Thompkins, at 387. When a court of appeals reverses a judgment of a trial court on the basis that the judgment is against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the resolution of the conflicting testimony. Id. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and remanded to the trial court. Id.
In this case, Joan Reid, appellant's sister, and Joan Berry, appellant's mother, gave testimony that establishes that appellant could not have committed the crime against Michael Evans on the night of December 25, because appellant was with them at his sister's house. Appellant's sister and mother testified that, towards the end of the evening, appellant was showing the children how to play video games. However, appellant's sister testified that she did not recall what appellant did after he finished playing with the children. Appellant's mother testified that he left the house around 11:00 or 11:30 in the evening on December 25. Thus, testimony by appellant's sister and mother does not establish that appellant could not have committed the crime against Michael Evans around midnight on December 25.
Additionally, appellant's mothers testimony lacks credibility. We base our conclusion on the fact that she testified that appellant was with her from 5:30 to 11:00 or 11:30 in the evening on December 25, only leaving a few times for a few minutes. Such testimony conflicts with statements by appellant that he was in Delaware, Ohio around 5:30 to 8:00 in the evening on December 25, robbing a warehouse. Furthermore, as noted above, the greater amount of credible evidence supports appellant's conviction. Accordingly, we conclude that appellant's conviction is not against the manifest weight of the evidence.
Because we concluded that appellant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence, we overrule appellant's first assignment of error.
Appellant's sixth assignment of error concerns the fact that appellant received two separate terms of actual incarceration on firearm specifications. In July 1997, the trial court convicted appellant of having a weapon while under disability. The trial court sentenced appellant to not less than three nor more than five years imprisonment based upon the conviction of having a weapon while under disability. The trial court imposed an additional three years of actual incarceration for appellant using a firearm while committing the crime of having a weapon while under disability. In February 1998, the three-judge panel convicted appellant of aggravated murder, aggravated burglary, aggravated robbery and kidnapping. The three-judge panel sentenced appellant to a minimum of sixty years imprisonment based on these convictions. The three-judge panel imposed an additional three years of actual incarceration for appellant using a firearm while committing the crimes of aggravated murder, aggravated burglary, aggravated robbery and kidnapping. Thus, appellant argues that he should not have received two separate terms of actual incarceration on firearm specifications because the underlying offenses leading to the firearm specifications arose from a single, continuous transaction. We agree.
Under former R.C. 2929.71 (A), which was in effect at the time of the instant offense, a trial court is to impose an additional three years of actual incarceration when the defendant commits a felony while in possession of a firearm. Former R.C. 2929.71(B) specified the conditions under which a court could or could not impose more than one three-year term of actual incarceration when the defendant had been convicted of multiple felonies.
According to R.C. 2929.71(B), only one three-year term of actual incarceration shall be imposed if a defendant is convicted of two or more felonies and the felonies were part of the same act or transaction. A transaction, for purposes of R.C. 2929.71(B), is a " 'series of continuous acts bound together by time, space and purpose, and directed toward a single objective.' " State v. Ayala (1996), 111 Ohio App.3d 627,631, appeal not allowed (1996), 75 Ohio St.3d 1508, and appeal dismissed (1996), 76 Ohio St.3d 1418, quoting State v.Wills (1994), 69 Ohio St.3d 690; see, also, State v. Jones
(Mar. 18, 1999), Franklin App. No. 98AP-639, unreported (1999 Opinions 450).
In this case, appellant was convicted of having a weapon while under disability, aggravated murder, aggravated burglary, aggravated robbery and kidnapping. The offenses committed by appellant had to occur as part of separate transactions and not in a single, continuous transaction in order for the trial court to properly impose more than one three-year term of actual incarceration on firearm specifications.
We conclude that appellant having a weapon while under disability and commission of the aggravated murder, aggravated robbery, aggravated burglary and kidnapping were bound together by time and space, and were committed as part of the same act or transaction. Appellant committed the offenses in a continuous time sequence and in close proximity inside Michael Evans' home. Likewise, the offenses were bound together by a common purpose and directed toward a single objective; namely, committing a crime against Michael Evans.
Accordingly, because the offenses to which appellant was convicted constitute a single act or transaction, R.C.2929.71(B) permits only one term of actual incarceration. As such, we conclude that the trial court erred in imposing more than one three-year term of actual incarceration for the firearm specifications in appellant's convictions. Therefore, we sustain appellant's sixth assignment of error.
In his fifth assignment of error, appellant argues that the three-judge panel erroneously and improperly sentenced appellant because the sentence pronounced in open court differs from that set forth in the judgment entry imposing that sentence. We agree.
The three-judge panel pronounced the following sentence in open court in appellant's presence:
 On Counts Number One, Two and Three, and those were the aggravated murder counts, it is the sentence of the Court that the Defendant be confined with [Ohio Department of Rehabilitation and Corrections] for a period of not less than 30 years to life, actual. Understand, this is with no parole.
 On the aggravated robbery, which is Count Number Four, it is the sentence of this Court that [the defendant] be confined with [Ohio Department of Rehabilitation and Corrections] for a period of 10 to 25 years actual.
 On the aggravated burglary, it is the sentence of this Court that [the defendant] be confined with [Ohio Department of Rehabilitation and Corrections] for a period of 10 to 25 years actual.
 On Count Number Six, the aggravated kidnapping, it is the sentence of this Court that [the defendant] be confined with [Ohio Department of Rehabilitation and Corrections] for a period of 10 to 25 years actual.
 There is a mandatory three years of actual incarceration on the firearm charge.
 Each of these sentences is to run consecutive with each other * * *.
 * * * [T]he total sentence imposed is a minimum of 63 years.
In the judgment entry filed February 8, 1998, the trial court stated:
 * * * [I]t is the sentence of the Court that the Defendant pay the costs of this prosecution and serve as to Counts 1, 2, and 3, Thirty (30) Years to Life, as to Counts 4, 5, and 6, not less than Ten (10) Years nor more than Twenty-Five (25) Years Actual Incarceration; said sentences to run consecutive with each other and will be served in the Ohio Department of Rehabilitation and Corrections. Further, Defendant shall serve an additional Three (3) Years Actual Incarceration for Use of a Firearm as to the specification in Count 1. The firearm specifications in Counts 2, 3, 4, 5, and 6 all merge with Count 1.
We conclude that the judgment entry is ambiguous as to whether it formalizes a sentence different from the sentence imposed by the trial court in open court in appellant's presence. The judgment entry, it could be argued, either imposes a sentence of forty-three years imprisonment (thirty years as to counts 1, 2 and 3, and ten years as to counts 4, 5 and 6, with three years for the firearm specification), or a sentence of one hundred twenty-three years imprisonment (thirty years as to each of counts 1, 2 and 3, and ten years as to each of counts 4, 5 and 6, with three years for the firearm specification). So as to avoid this confusion, the judgment entry should read as the record does.
It is likely that the differences in the sentences are the product of clerical error. However, a defendant is required to be present during the imposition of a sentence and must be present when a trial court subsequently modifies a sentence. Crim.R. 43(A); State v. Bell (1990), 70 Ohio App.3d 765, 773;Columbus v. Rowland (1981), 2 Ohio App.3d 144,145.
In this case, appellant was present only during the trial court's decision to impose a minimum of sixty-three years imprisonment. There is no record of appellant being present during any decision to impose the sentence reflected in the judgment entry. However, a court speaks through its judgment entries. Carter v. Johnson (1978), 55 Ohio App.2d 157, 162, citing Fountain v. Pierce (1931), 123 Ohio St. 609. Thus, we look to the judgment entry when determining the sentence imposed by the trial court.
Therefore, we conclude that the sentence reflected in the judgment entry cannot stand. Accordingly, we sustain appellant's fifth assignment of error. As such, we vacate the sentence imposed by the three-judge panel and remand this cause so that the trial court may issue a judgment entry reflecting its true action in a manner consistent with the analysis outlined above.
In summary we overrule appellant's first, second, third, fourth, seventh, eighth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth and seventeenth assignments of error. However, we sustain appellant's fifth and sixth assignments of error. Therefore, the judgments of the Franklin County Court of Common Pleas are reversed and this cause is remanded for further proceedings consistent with this opinion.
Judgments reversed and cause remanded.
BRYANT and PETREE, JJ., concur.